**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DENNIS MURRAY, an individual, and RAVENSWOOD, THE ISLAND LLC, an Oklahoma limited liability company, ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | Case No. 09-CV-720-TCK-TLW |
| HUTCHINSON COMMISSION CO., DERRICK NEAL, an individual, and UNITED STATES OF AMERICA, ex rel. DEPARTMENT OF JUSTICE, ) ) ) ) ) ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Before the Court are Defendant Derrick Neal's Motion to Dismiss Pursuant to Federal Rules 12(b)(1) and 12(b)(6) (Doc. 17) and Motion to Dismiss of Jordan, Inc. d/b/a Hutchinson Commission Co. (Doc. 21). These motions raise similar arguments and are therefore addressed simultaneously.

**I.       Factual Background**

Plaintiffs Dennis Murray ("Murray") and Ravenswood, The Island LLC ("Ravenswood"), a company formed and majority owned by Murray, filed a Complaint asserting claims against Defendants Hutchinson Commission Company ("Hutchinson") and Derrick Neal ("Neal"), a former employee of Ravenswood. Therein, Plaintiffs allege that Neal stole 288 head of cattle from Plaintiffs, that Hutchinson sold the cattle with knowledge that they were stolen, and that Hutchinson paid the proceeds of the sale to Neal. Plaintiffs also allege that Neal was, by physically entering the land and making threatening statements, interfering with Plaintiffs' ability to harvest a soybean

crop. Plaintiffs assert the following claims against both Neal and Hutchinson: (1) conversion of the cattle and/or proceeds from the sale of the cattle; (2) violation of 7 U.S.C. § 213(a) ("§ 213(a)"), a provision of the Packers and Stockyards Act ("PSA") ("PSA Claim");[1] (3) tortious interference with business and/or contract; (4) violation of the Oklahoma Consumer Protection Act; and (5) unjust enrichment.  Plaintiffs assert the following claims against Neal only: (1) temporary and permanent injunction enjoining Neal from further interfering with Plaintiffs' soybean crop;[2] (2) breach of fiduciary duty;  (3) accounting for missing money, cattle, and other assets; (4) breach of contract, based on Neal's failure to give Plaintiffs the proceeds of the cattle sale; and (5) embezzlement.[3]

Defendants moved to dismiss all claims pursuant to Rule 12(b)(1) under the "primary jurisdiction" doctrine.  Defendants also moved the Court to dismiss the PSA Claim, the only federal claim, and then decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367.[4]  Based on the agreement of the parties, the Court stayed discovery and postponed entry of a schedule pending the Court's ruling on the motions to dismiss.

---

[1]  Plaintiffs do not allege that Neal is a "stockyard owner, market agency, and/or dealer" subject to § 213(a)'s prohibitions.  Therefore, if and to the extent the PSA Claim is asserted against Neal, it is dismissed for failure to allege an essential element.  It does not appear from the briefing that Plaintiffs intend to assert the PSA Claim against Neal.

[2]  On November 12, 2009, the Court held a hearing on Plaintiff's Motion for Temporary Restraining Order, during which Neal claimed an interest in the proceeds from the sale of the crop.  The Court enjoined Neal from interfering with the crop but ordered Plaintiffs to post a $100,000 surety bond.  This ruling is memorialized by written Order dated December 8, 2009. (*See* Doc. 19.)

[3]  Plaintiffs dismissed their claim for constructive trust against the United States, and the United States is no longer a party.

[4]  The Complaint alleges that the Court has federal question jurisdiction over the PSA Claim and supplemental jurisdiction over the remaining claims.  The Complaint does not allege any other basis for the Court's subject matter jurisdiction.

2

## II.     Rule 12(b)(1) Motion

Defendants argue that this Court lacks subject matter jurisdiction pursuant to the doctrine of primary jurisdiction.  Defendants did not attach any evidence to their motions, and Defendants have therefore made a "facial attack" on Plaintiffs' Complaint.  In considering a facial attack, the Court must accept the allegations in the Complaint as true.  *See Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).

"Primary jurisdiction is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the action by an administrative agency." *Jackson v. Swift Eckrich, Inc.*, 53 F.3d 1452, 1455 (8th Cir. 1995) (internal quotation marks omitted); *see also United States v. Haun*, 124 F.3d 745, 749 (6th Cir. 1997) (same). The doctrine applies when a claim is properly cognizable in federal court, but the claim raises issues within the special competence of a federal administrative agency.  *See Jackson,* 53 F.3d at 1455. The primary jurisdiction doctrine is distinguishable from, but often confused with, the doctrine of exhaustion of administrative remedies. *See id.* at 1456.  The "exhaustion doctrine ordinarily requires a plaintiff to pursue relief, when available, from an administrative agency before proceeding to the courts," and "[u]ntil that recourse is exhausted, suit is premature and must be dismissed." *Id.* at 1456.  In contrast, "the doctrine of primary jurisdiction requires a court to enable a referral to an agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Id.*  In determining whether the primary jurisdiction doctrine applies, courts "look to whether the purposes of the doctrine, including uniformity and accuracy gained through administrative expertise, will be especially furthered by invocation in the particular litigation." *See*

*Haun*, 124 F.3d at 749 (acknowledging that "no ready formula" governs application of the primary jurisdiction doctrine).

Defendants contend that the Department of Agriculture ("DOA") possesses specialized expertise to determine "any alleged violation of the PSA." (Neal's Mot. to Dismiss 7.) According to Defendants, the powers and duties relevant to this case include: "(1) a determination of which stockyards fall within the purview of the legislation; (2) compliance with the legislation and rules regarding market agencies and dealers operating at such stockyards; (3) regulation of rates and charges for stockyard services and rules or regulations affecting them; and (4) prevention of unfair, discriminatory or deceptive practices." (*Id.*) Defendants contend that the DOA "should first address [Plaintiffs'] complaints before [they] proceeds to federal court." (*Id.* 8.)

The doctrine of primary jurisdiction does not require dismissal or stay in this case. First, there is no exhaustion requirement related to Plaintiffs' PSA Claim, as the statute provides that such claim may be brought before the DOA *or* a federal court in the first instance. *See* 7 U.S.C. § 209(b). Second, the Court finds nothing in this case that requires the "special expertise" of the DOA. Assuming that Plaintiffs have stated a claim under the PSA, which is discussed below, Plaintiffs' PSA Claim involves a single instance of conversion of cattle and subsequent sale thereof. While there may be more complex PSA claims that require certain administrative expertise, this is not such a case. Instead, the Court is equipped and well-suited to decide the PSA Claim in the first instance. *See Haun*, 124 F.3d at 750 (reasoning that "[r]eferral to the Secretary would not serve any useful purpose" because the "district court is not likely to encounter issues of intricate fact or discretion demanding special administrative expertise"). Nor will this case, which involves an isolated

4

incident, "upset the uniformity of an administrative program." *See id.* Accordingly, the PSA Claim will not be dismissed or stayed based on the doctrine of primary jurisdiction.

## III.    Rule 12(b)(6) Motion

In considering a motion to dismiss under Rule 12(b)(6), the Court "assume[s] the truth of the plaintiff's well-pleaded factual allegations and view[s] them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 550 U.S. at 570). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

Relevant to this case, § 213(a) provides:

> It shall be unlawful for any stockyard owner, market agency, or dealer to engage in or use *any unfair . . . or deceptive practice or device . . . with the* receiving, marketing, buying, or *selling* on a commission basis or otherwise, . . . *of livestock.*

7 U.S.C. § 213(a). With respect to the PSA Claim, Plaintiffs allege: (1) Hutchinson is a stockyard owner, market agency, and/or dealer, as those terms are defined in 7 U.S.C. § 201 and utilized in § 213(a); and (2) Hutchinson "engaged in *unfair practices* by selling stolen cattle with notice of the mortgage [on the cattle, held by State Exchange Bank in Lamont, Oklahoma] and under the false pretense upon which Defendant Neal presented such cattle for sale." (Compl. ¶¶ 9, 72, 76 (emphasis

added).)  Defendants argue that Plaintiffs' allegations fail to state a claim under § 213(a) because: (1) Plaintiffs' Complaint only alleges "unfair" conduct, and the Tenth Circuit requires actual or likely competitive injury in cases involving allegedly "unfair" conduct;[5] and (2) Plaintiffs' allegations involve only a single transaction, rendering it impossible for Plaintiffs to satisfy the "practice or device" element of the statute.

As an initial matter, the Court rejects Defendants' argument that the Court must limit its analysis to "unfairness" due to Plaintiffs' failure, in paragraph 76 of the Complaint, to expressly include the word "deceptive."  The very next paragraph, which quotes the statutory language, underlines "or deceptive," indicating that Plaintiffs also intend to invoke the "deceptive" component of the statute.  (*Id.* ¶ 77.)  Reading the Complaint as limited to "unfairness" would violate the principle of construing the Complaint in favor of Plaintiffs and would be a narrow, strained reading. In addition, Plaintiffs' brief makes clear that they intend to allege deceptive conduct as well as unfair conduct.  (*See* Pls.' Resp. to Mot. to Dismiss 5 (arguing that "disregarding a deputy sheriff's call to a commission company stating that cattle are stolen is both unfair and deceptive")).  Therefore, the Court construes the Complaint as alleging both unfair and deceptive conduct, and Plaintiffs' inability to show an injury to competition does not warrant dismissal.[6]

---

[5]  This argument was raised by Hutchinson in its reply brief.  (*See* Doc. 29.)

[6]  Were the Court to construe the Complaint as alleging only "unfair" conduct, the allegations would fail to state a claim based on a lack of actual or likely competitive injury. *See Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1230 (10th Cir. 2007) (following circuits holding that, in order to show  "unfairness" under § 202(a) of the PSA, an analogous provision to § 213(a) that applies to live poultry dealers rather than stockyard owners, a plaintiff must "show that the practice injures or is likely to injure competition") (limiting its holding to allegations of "unfair" conduct and stating that "[w]e are concerned here only with whether unfairness requires a showing of a likely injury to competition, not whether deceptive practices require such a showing.").  The Court assumes, for purposes of this motion, that Plaintiffs' sufficiently allege "deceptive" conduct, which does not require a showing of competitive injury.

The next issue is whether Plaintiffs have alleged a "practice or device."  The Tenth Circuit has instructed that "[t]he words 'unfair, unjustly discriminatory, or deceptive practice or device' as used in [§ 213(a)] are not defined, and their meaning must be determined by the facts of each case *within the purposes of the [PSA]*." *Capitol Packing Co. v. United States*, 350 F.2d 67, 76 (10th Cir. 1965) (emphasis added).[7]   The PSA, passed in 1921, "was designed to secure the free and unburdened flow of livestock across the nation from producers to consumers by regulating the business of stockyards and their participants." *Haun*, 124 F.3d at 748 (citing *Stafford v. Wallace*, 258 U.S. 495, 514 (1922)).  The PSA was "[m]otivated in part by concern over exorbitant charges, duplicate commissions, and deceptive pricing practices, all made possible by collusion between the stockyards management and the commission men, on the one hand, and the packers and dealers on the other." *Id.* (internal quotations omitted). The "chief evil" at which the PSA is aimed is "the monopoly of the packers, enabling them unduly and arbitrarily to increase the price to the consumer who buys." *See Mahon v. Stowers*, 416 U.S. 100, 106 (1974) (internal quotations marks omitted).

With these general purposes of the PSA in mind, the Court must determine whether a single instance of knowingly selling stolen cattle and then paying the proceeds to the known thief constitutes a "practice or device" under § 213(a), where there are no allegations that the defendant plans to repeat such conduct.   Cases interpreting the PSA uniformly hold that a single instance of unfair, discriminatory, or deceptive conduct cannot give rise to a claim under § 213(a) or similar provisions.  *See Guenther v. Morehead*, 272 F. Supp. 721, 726 (S.D. Iowa 1967) (after outlining purposes of PSA, concluding that § 213 "does not purport to govern a single private transaction

---

[7]  Based on this pronouncement by the Tenth Circuit, the Court rejects Plaintiffs' argument that the Court must ignore the purposes and legislative history of the PSA in construing § 213(a)'s meaning.

which does not arise from an inequality between the market agency or dealer and those who are forced to deal with them") (holding that single instance of livestock dealer's allegedly wrongful negotiation of the plaintiff's check was not actionable under § 213(a) because it did not constitute a "practice or device"); *McClure v. E.A. Blackshere Co.*, 231 F. Supp. 678, 682 (D. Md. 1964) (holding that action to recover debt owed by defendant cattle dealer was not actionable under § 208 of PSA, which also used the word "practice") (reasoning, *inter alia*, that "[w]hile conceivably a consistent course of conduct, even with respect to nonpayment of bills, might in time become a 'practice,' it is difficult to see how a single instance of the nonpayment of a bill could be so denominated"); *see also De Vries v. SIG Ellingson & Co.*, 100 F. Supp. 781, 786 (D. Minn. 1951) (rejecting the defendant's argument that, because the PSA obligated it to receive all livestock consigned to it for sale, the PSA provided a defense to the plaintiff's common-law conversion claim) (stating that "Congress had no intention of regulating the entire business of the livestock and meat industry" or of "superseding" common laws related to sales of personal property).

Tenth Circuit law, although not directly on point, is consistent with the case law cited above. *See Capitol Packing Co.*, 350 F.2d at 77 (requiring violations to be an unfair or deceptive "manner of dealing" or unfair or deceptive "method[] of trade"). The Tenth Circuit's use of the phrases "manner of dealing" and "method of trade" indicates that a "practice or device" under § 213(a) requires something more than a single, isolated instance of the allegedly unlawful conduct. *See Guenther*, 272 F. Supp. at 727-28 (relying on *Capitol Packing* and concluding that "device," which is commonly defined as "artifice" or "scheme," "implies a normal, customary way of approaching a particular business transaction" and that there "would, of necessity, have to be a number of such transactions in order for the approach to become normal or customary"). This reasoning is

8

particularly persuasive where, as in this case, there are no allegations that the defendant has an ongoing device or scheme to repeat similar unlawful conduct on future occasions.  Therefore, Plaintiffs' allegations fail to allege a "practice or device" as those terms are used in § 213(a) and fail to state a claim under the PSA.

Defendants' motions to dismiss (Docs. 17 and 21) are GRANTED in part and DENIED in part.  The motions are GRANTED as to Plaintiffs' PSA Claim (count 3), and such claim is DISMISSED with prejudice pursuant to Rule 12(b)(6).  The remaining claims all arise under state law, and the Court declines to exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(c)(3).  Therefore, all state-law claims are dismissed without prejudice.  There are no remaining claims pending before the Court, and this matter is therefore dismissed.  Plaintiffs' Motion to Lift Discovery Stay (Doc. 40) is DENIED as moot.  The TRO entered by this Court (Doc. 19) is hereby DISSOLVED, and surety bond #105369964 is hereby released.  This Order terminates the litigation and will be followed by a Judgment of Dismissal.

**IT IS SO ORDERED this 26th day of August, 2010.**

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**